## STATE OF CONNECTICUT *v.* WILLIE JAMES FAGAN
### (AC 24874)

Bishop, DiPentima and Gruendel, Js.

Argued May 25—officially released October 18, 2005

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Suzanne M. Vieux*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Willie James Fagan, appeals from the judgment of conviction, rendered after a jury trial, of four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), one count of possession of cocaine with intent to sell in violation of General Statutes § 21a-277 (a) and one count of possession of cocaine with intent to sell within 1500 feet of a public housing project in violation of General Statutes

§ 21a-278a (b). The defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal because the state failed to prove certain key elements of the crimes of which he was convicted and (2) refused to grant his written request to charge the jury. We affirm the judgment of the trial court.

On March 14, 2002, a team of Norwalk police officers arrived at the door of 261 Healy Avenue, building number nineteen, apartment 1B. They had obtained a search warrant on the basis of information that firearms involved in an earlier shooting were located inside the apartment. After knocking and declaring, "Police with a search warrant," they waited ten to eleven seconds with no response. The officers proceeded to open the door forcibly with the assistance of a battering ram. Three members of the search team entered with their weapons drawn.

In addition to the defendant, there were three adult women and four children in the apartment at the time of the entry. The women were in the hallway, and when the officers ordered them to get down, they promptly complied. It was then that the officers witnessed the defendant fleeing from one of the bedrooms in an attempt to escape from the window of another. The police team in the apartment yelled, "Police, get down, get down," and the officer who was stationed outside as part of the perimeter cover unit also pointed a gun at the defendant and ordered him to stop. The defendant complied, got down on the floor and was handcuffed.

Despite hearing children screaming when they first entered, the police did not discover them until a two year old child emerged, crying, at the door of the bedroom from which the defendant had just fled. One of the police officers handed the child to another member of the team and entered the bedroom. There were two more two year old children sitting on the bed and, as

the officer lifted one child to give her to another officer, he noticed a bag containing smaller plastic bags on the bed behind the child's legs. Another bag that appeared to contain crack cocaine was resting on the bed where the child had been sitting. When he lifted the second child, he saw another plastic bag that also appeared to contain crack cocaine. In addition, there was a small plate between where the two children had been sitting, containing a razor blade and what appeared to be crack cocaine "that had been recently prepared." When a youth officer arrived to take custody of the children, the three two year old children who were taken from the bedroom and the twelve year old who had been in the living room were all visibly upset. One of the two year olds had been vomiting.

A detective arrived on the scene after the apartment had been secured, and photographed the drugs and paraphernalia seized during the search. The police seized the plate full of cocaine and the razor blade, several bags containing crack cocaine, several bags containing marijuana, a box full of empty bags, two cellular telephones, a police scanner and some rounds of ammunition. The detective concluded that when taken as a whole, the evidence, and the fact that the box of empty bags had been found in the bedroom rather than the kitchen, all indicated that the drugs were being packaged and sold directly from the apartment.

The state's chief toxicologist tested and analyzed all of the white rock like material seized from the apartment and determined that it was indeed cocaine in freebase form. He also determined the residue on the plate and razor blade to be cocaine. At trial, he testified as an expert witness about the adverse consequences resulting from the ingestion or smoking of cocaine, and the increased risk to first time users and those of smaller size and weight.

On July 22, 2003, the state filed an amended information that set forth the seven counts with which the defendant was charged: four counts of risk of injury to or impairing morals of children in violation of § 53-21 (a) (1); one count of possession of narcotics with intent to sell or dispense in violation of § 21a-277 (a); one count of possession of narcotics with intent to sell within 1500 feet of a public housing project in violation of § 21a-278a (b); and one count of possession of marijuana in violation of § 21a-279 (c). A jury trial commenced on August 4, 2003, and on August 6, 2003, the jury found the defendant guilty of all counts but the last. The defendant was sentenced to a total effective term of fifteen years imprisonment. This appeal followed.

I

The defendant claims that there was insufficient evidence to sustain the jury's guilty verdict.[1] Specifically, the defendant claims that the state failed to prove the key element of possession regarding the charges of having violated §§ 21a-277 (a), 21a-278a (b)[2] and 21a-279 (c).[3] In addition, the defendant claims that the state failed to prove the key elements of causation and intent regarding risk of injury to a child under § 53-21 (a) (1). We are not persuaded.

The standard of review for a sufficiency of the evidence claim employs a two part test. "First, we construe

---

[1] The defendant argues that the court improperly denied his motion for a judgment of acquittal, filed on August 5, 2003. The motion asserted that "the evidence adduced at trial is insufficient and therefore the court should enter an order of judgment of acquittal."

[2] Although the defendant listed General Statutes § 21a-278 (b) in his brief as one of the charges, in actuality, the charge and subsequent conviction were under General Statutes § 21a-278a (b).

[3] The jury found that the defendant was not guilty of possession of marijuana under General Statutes § 21a-279 (c), and the state has not appealed from the judgment of acquittal.

the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). "[I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Internal quotation marks omitted.) *State* v. *Niemeyer*, supra, 258 Conn. 519.

## A

The defendant's first claim of evidentiary insufficiency asserts that the evidence was inadequate to prove that he possessed the cocaine, as required by §§ 21a-277 (a) and 21a-278a (b). "In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the cocaine was not found on the defendant's person, the state must proceed on the theory of *constructive possession*, that is, possession without direct physical contact. . . . One factor that may be considered in determining

whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, *unless there are other incriminating statements or circumstances tending to buttress such an inference.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 225, 733 A.2d 156 (1999). The present case involves such circumstances.

At trial, the state presented evidence from which the jury reasonably could find that the defendant was in constructive possession of the cocaine. Only ten or eleven seconds from the initial knock at the door, the police forcibly entered the apartment, and three of the officers testified to seeing the defendant flee from the bedroom in which they found the cocaine. In addition, the officers in the apartment, along with the officer stationed outside to patrol the perimeter, testified to seeing the defendant attempt to escape through a window. The women, who were not seen in or near the bedroom, demonstrated no intent to escape and complied when the police told them to get down. The twelve year old boy was not found in close proximity to the cocaine, and it would be unfathomable to consider that any of the three two year olds in the bedroom had had any involvement in the cocaine's presence there. Construing the evidence in the light most favorable to sustaining the jury's verdict, we conclude that the verdict reasonably was supported by the evidence. The defendant's claim of insufficiency of the evidence to prove possession therefore fails.

### B

The defendant next claims that the evidence was insufficient to prove the elements of causation and

intent with regard to the charges of risk of injury to a child under § 53-21 (a) (1).[4] Specifically, the defendant claims that the state failed to prove that (1) he caused or permitted a situation to exist in which the lives or limbs of the children were endangered[5] and (2) he acted with specific intent.

[1] We note that this appeal presents an unusual situation. In a footnote in its brief, the state noted that "the trial court did not instruct the jury on the 'situation' prong of § 53-21 (a) (1)." At oral argument, the state's attorney acknowledged a "potential infirmity" in the jury instructions, as the court had charged the jury on the "act" prong of § 53-21 (a) (1), rather than the "situation" prong, under which the state had proceeded at trial.

It is axiomatic that a claim of instructional error as to the elements of a crime is one of constitutional magnitude. See *State* v. *Jarrett*, 82 Conn. App. 489, 492, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). The defendant, however, failed to preserve any such claim. He voiced no objection at trial, nor did he address this potential infirmity in his brief or at oral argument. Although the defendant may prevail on an unpreserved claim of constitutional dimension under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), our Supreme Court has insisted that a party seeking review under *Golding* or the plain error doctrine; see Practice Book § 60-5; is "obligated . . . affirmatively to request review under these doctrines." *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). In the present case, the defendant neither requested *Golding* review nor addressed the alleged instructional infirmity, even after the state presented it. The defendant had ample opportunity to do so by way of a reply brief, yet none followed. We therefore refuse to review a claim never raised by the defendant.

Furthermore, "a jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000). Our careful review of the entire record reveals overwhelming evidence that the jury verdict would have been the same had the court charged on the "situation" prong of § 53-21. Thus, even were we to review the "potential infirmity" drawn to our attention by the state, it appears that the infirmity amounted, at worst, to harmless error.

[5] Although the defendant claims that the state failed to prove that he caused or permitted a situation that endangered lives or limbs of the children, the state need only prove that "the health of such child is likely to be injured or the morals of such child are likely to be impaired"; General Statutes § 53-21 (a) (1); to satisfy the relevant prong of the § 53-21 analysis. As such, we will analyze the claim accordingly.

Section 53-21 (a) provides in relevant part that "[a]ny person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, *or* does any act likely to impair the health or morals of any such child"; (emphasis added); shall be guilty of a class C felony. "The general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), overruled in part on other grounds, *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). Recently, our Supreme Court affirmed that our case law interprets the relevant portion of § 53-21 as comprising two distinct parts and criminalizing "two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 148, 869 A.2d 192 (2005).[6] As no actual harm was done to the person of the children, this case involves only the situational element. "Under the 'situation' portion of § 53-21 [a] (1), the state need not prove actual injury to the child. Instead, it must prove that the defendant wilfully created a situation that posed a risk to the child's health or morals." Id.

As outlined previously, there was sufficient evidence for the jury to conclude that the defendant construc-

[6] Although *Padua* considers § 53-21 prior to the statute's amendment in 2000, the relevant part of the statute is identical to that used in the present case.

tively possessed the cocaine in the apartment. There was no dispute that when the police arrived, the three two year old children were in the room, and at least two were on the bed with bags of cocaine and a plate containing cocaine and a razor blade. There was expert testimony by the state's chief toxicologist regarding the harmful effects of cocaine if eaten, especially by those of a smaller size. Even without the expert testimony, however, our Supreme Court recently held that "the harmful physiological effects of cocaine are within the knowledge and experience of a typical juror." *State* v. *Smith*, 273 Conn. 204, 211, 869 A.2d 171 (2005). In summary, the defendant constructively possessed the cocaine that the three two year old children had within reach, and we therefore conclude that there was ample evidence to prove that the defendant caused or permitted the three two year old children "to be placed in such a situation that . . . the health of [those children was] likely to be injured . . . ." General Statutes § 53-21 (a) (1).

The twelve year old boy, however, was not observed within close proximity of the cocaine; he was found in the living room, rather than the bedroom. Nevertheless, the risk of harm applies to the twelve year old because the jury reasonably could have found that the defendant caused or permitted the boy to be placed in a situation in which the boy's morals would likely be impaired. See General Statutes § 53-21 (a) (1).

In *State* v. *Padua*, supra, 273 Conn. 148–49, our Supreme Court refused to consider the impairment of the morals of a seven year old and a three year old because the informations charged the defendant only on the injury to health prong of the statute. Therefore, the state "could not proceed under the . . . impairment of morals [prong] of the situation portion of the statute." Id., 149. In prior proceedings in *Padua*, we additionally determined that "exposing a child, old

enough to appreciate what was transpiring, to selling marijuana might be considered as endangering the morals of that child . . . ." *State* v. *Padua*, 73 Conn. App. 386, 393, 808 A.2d 361 (2002), reversed in part on other grounds, 273 Conn. 138, 869 A.2d 192 (2005). In the present case, the jury reasonably could have concluded that a twelve year old child had the capacity to appreciate the nature of selling cocaine. Having determined that there was sufficient evidence to prove that the defendant constructively possessed the cocaine, we further determine that there was sufficient evidence to prove that he caused or permitted the twelve year old child to be placed in a situation in which his morals were likely to be impaired under § 53-21 (a) (1).[7]

The defendant also claims that the evidence was insufficient to prove that he acted with specific intent. We recently have ruled that specific intent is unnecessary in finding a violation of § 53-21: "It is not necessary, to support a conviction under § 53-21, that the defendant be aware that his conduct is likely to impact a child younger than the age of sixteen years. Specific intent is not a necessary requirement of the statute." *State* v. *Davila*, 75 Conn. App. 432, 438, 816 A.2d 673, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003), cert. denied, 543 U.S. 897, 125 S. Ct. 92, 160 L. Ed. 2d 166 (2004). Therefore, we will not examine the specific

---

[7] As part of his insufficiency of the evidence claim concerning the risk of injury to the four children under § 53-21 (a) (1), the defendant asserts that "[t]he state did not show that [he] had guardianship over the minor children" and, therefore, "a person who is not the legal guardian of a minor child cannot be held statutorily liable for causing or permitting the child to be in a location near cocaine, even though that person is in the same room with the minor child." That is a baseless argument unsupported by law. The statute itself begins with "[a]*ny* person who . . . causes or permits *any* child . . . ." (Emphasis added.) General Statutes § 53-21 (a) (1). "The clear language of § 53-21 [(a) (1)] and the case law interpreting it contain no requirement that the defendant be a parent or guardian of the child or owe a duty of care to the child in order to be convicted under the statute." *State* v. *Padua*, supra, 273 Conn. 163–64. The defendant's claim is meritless.

intent claim. In light of the foregoing, we conclude that the jury's verdict reasonably was supported by the evidence. The defendant's claim fails.

## II

The defendant next claims that the court improperly refused to grant his written request to charge the jury on the issues of reasonable doubt and clear and convincing evidence. Specifically, the defendant claims that his written request was relevant to the issues in the case and accurately stated the law, and, therefore, the refusal of the request to charge was improper. We disagree.

"It is settled law that a defendant who has produced evidence supporting a legally recognized defense is entitled, as a matter of law, to a theory of defense instruction, and that the denial of such an instruction is a violation of due process. . . . [A] request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. . . . A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citation omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 283, 780 A.2d 53 (2001), overruled in part on other grounds, *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004).

After the close of evidence, the defendant timely filed a four part written request to charge, in compliance with Practice Book § 42-17. The court included the first three instructions in its charge, but refused to incorpo-

rate the last, which stated that "[p]roof beyond a reasonable doubt is the highest level of certainty recognized in the law. It requires a significantly greater degree of certainty tha[n] the next lower standard of 'clear and convincing evidence.' The clear and convincing standard requires evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for which it is offered as proof. To be clear and convincing, the evidence must be so clear as to leave no substantial doubt and be sufficiently strong to command the unhesitating assent of every reasonable mind. Again, the proof beyond a reasonable doubt standard requires a significantly greater degree of certainty than that required to meet the clear and convincing evidence standard."

On August 6, 2003, before the jury was admitted to hear closing arguments, the court explained why it would not include the defendant's fourth instruction: "The reason I declined to put it into my charge is that it basically is a comparison of beyond a reasonable doubt to the standard of clear and convincing evidence, and there's an explanation of what clear and convincing evidence is. I don't see where it adds anything to my charge; as a matter of fact, I think it would further confuse the jurors. A paragraph explaining to them what clear and convincing evidence is and then telling them about—but that's not your standard here, I don't see where it adds anything to the charge, and it might, in fact, in my view, confuse the jury." We agree with the court that the instruction was both unnecessary, in light of the instruction taken as a whole, and would likely serve only to confuse the jury.

Our Supreme Court in *State* v. *Ryerson*, 201 Conn. 333, 341–44, 514 A.2d 337 (1986), held that the trial court properly had refused to include the defendant's

request when charging the jury on reasonable doubt.[8] In that case "the trial court instructed the jury in accordance with the standard charge on reasonable doubt. The defendant's burden with respect to this claim of error [was] thus especially heavy because no erroneous instruction was given. . . . We have stated many times that although a legally accurate and properly submitted request to charge should be accepted by the trial court, the refusal to do so is not a ground for reversal if the substance of the request is adequately conveyed to the jury in other portions of the charge." (Citations omitted; internal quotation marks omitted.) Id., 342–43.

In the present case, as in *Ryerson*, the court charged the jury on reasonable doubt. In fact, the court offered a jury charge that was exceedingly thorough in its explanation of the reasonable doubt standard.[9] The charge

---

[8] In *Ryerson*, the requested charge read as follows: "[P]roof beyond a reasonable doubt means that the State must convince each juror to a subjective state of near certitude of the guilt of the accused. If you are not convinced in your mind to a mental state of near certitude of the guilt of the accused, then the State has not convinced you beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ryerson*, supra, 201 Conn. 341.

[9] The court instructed: "The phrase, reasonable doubt, has no technical or unusual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable. A reasonable doubt is a doubt for which a reason can be assigned. It is a doubt which is something more than a guess or a surmise. It is not a conjecture or fanciful doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts. A reasonable doubt is a doubt based on reason and not on the mere possibility of innocence. It is a doubt for which you can, in your own mind, conscientiously give a reason. A reasonable doubt, in other words, is a real doubt, an honest doubt. A doubt which has its foundation in the evidence or the lack of evidence. It is the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed and attention to. It is not sufficient that the defendant's guilt is probable or even more probable than his innocence. Nor can the defendant be convicted upon mere suspicion. No amount of suspicion, however strong, will warrant his conviction. Now, of course, absolute certainty in the affairs of life is almost never attainable and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all the evidence, if there is something in that

the defendant requested only would have added the clear and convincing standard, which served no purpose in the present case and might have had the detrimental effect of confusing the jury.

"[A]ttempts to explain the term reasonable doubt do not usually result in making it any clearer to the minds of the jury [and] judicial attempts to clarify the meaning of the phrase reasonable doubt by explanation, elaboration or illustration . . . more often than not tend to confuse or mislead." (Citations omitted; internal quotation marks omitted.) Id., 342. Our Supreme Court in *Ryerson* opined that a potentially confusing standard jury instruction on "reasonable doubt" can be further obfuscated by a defendant's request to include additional language. See id.

We conclude that the court's charge on reasonable doubt was sufficient and that the court properly refused the defendant's request to charge on the difference between clear and convincing evidence and reasonable doubt because it was unnecessary and likely to confuse the jury. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

---

evidence or lack of evidence which leads in the minds of the jury as reasonable men and women a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. If there is no reasonable doubt, then the accused must be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt, is consistent with guilt and is inconsistent with any other reasonable conclusion. If you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."