STATE OF CONNECTICUT *v.* SCOTT A. CRAWLEY
(AC 25241)

Schaller, Harper and Hennessy, Js.

Argued October 14, 2005—officially released February 7, 2006

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, *Paul N. Rotiroti*, assistant state's attorney, and

*Christopher J. Dunne*, certified legal intern, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Scott A. Crawley, appeals from the judgments of conviction, rendered following a jury trial, of two counts of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b).[1] The defendant claims that (1) his convictions under both counts violated the constitutional prohibition against double jeopardy, (2) the evidence did not support his conviction under one of the counts and (3) the court's constructive possession instruction to the jury was legally inadequate. We affirm the judgments of the trial court.

The evidence permitted the following findings of fact. On September 5, 2002, Joseph Amato, a detective with the Manchester police department who was assigned to the federal Drug Enforcement Administration, informed Thomas Dillon, then a detective with the Wethersfield police department, that the defendant possessed a "large quantity of cocaine." Amato informed Dillon of the defendant's known address in Wethersfield and related information concerning the defendant's automobile and license plate number. During his subsequent investigation, Dillon learned that the defendant's operator's license was suspended.

On September 6, 2002, Dillon conducted surveillance at the Wethersfield address given to him by Amato. Dillon observed the defendant get into his automobile and drive away. At Dillon's request, Christopher Morris, a Wethersfield police officer, stopped the defendant's

---

[1] The court sentenced the defendant to a total effective term of thirty years incarceration. Under the first count, the court imposed a sentence of twenty years. Under the second count, the court imposed a sentence of ten years, to run consecutively with the sentence imposed under the first count.

automobile at a gasoline station and arrested the defendant on a charge of driving with a suspended license. Morris searched the defendant incident to the arrest and found a bag containing 120 smaller bags of cocaine, in a powder mixture, in one of the front pockets of the defendant's pants. The cocaine powder weighed 87.32 grams and consisted of between 17 to 60 percent pure cocaine.

Later that day, Robert Deroehn, a detective with the Wethersfield police department, arrived at the defendant's known residence in Wethersfield, 7 Spring Street. There, Deroehn encountered Daniel Hardrick, who owned the residence. Hardrick told Deroehn that the defendant did not live at the residence but that the defendant "stayed there." Hardrick signed a consent form, thereby permitting the police to enter and search the home without a warrant. Amato searched the defendant's room and discovered a postal mailing tube that contained two bags of cocaine, in a powder mixture, in the closet in the defendant's room. One bag contained 26.73 grams of cocaine powder separated into thirty-eight smaller bags. Another bag contained 62.60 grams of cocaine powder and consisted of 72 percent pure cocaine. On the basis of evidence concerning, inter alia, the quantities of cocaine possessed by the defendant, as well as the quantities of cocaine typically possessed by persons who intend to sell cocaine, the jury reasonably found that the defendant possessed both stashes of cocaine with the intent to sell them. Additional facts will be set forth as necessary.

I

The defendant first claims that his convictions under both counts violated the prohibition against double jeopardy. We disagree.

The defendant argues that he received multiple punishments for a single offense and that the conviction

under one count "must be set aside because it violates the double jeopardy clause."[2] The defendant argues: "The evidence presented does not comprise two separate acts of possession with the intent to sell under [§ 21a-278 (b)]. During the entire time, the defendant possessed both stashes [of cocaine] concurrently, one constructively and one actually on his person. Under the circumstances of this case, the narcotics were not substantially differentiated by location. There was no evidence that the intent for the drugs was different; both [stashes] were possessed with the intent to sell. Therefore, the separate stashes cannot be sufficiently differentiated by time, location or intended purpose to [constitute] two separate and distinct acts for punishment purposes. During the surveillance and continuous investigation of the defendant, the location of some of the contraband on the defendant's person and some in the house on the same day, with no other indication of a separate intent for the two [stashes of cocaine] constitutes one single act of possession with intent to sell for punishment purposes." The defendant also asserts that his arrest was a result of "one continuous police investigation."

The state argues that the defendant was convicted for two separate acts of criminal conduct and that the facts underlying each count "differed significantly." The state argues that the discovery of "two distinct drug

[2] The defendant cites generally to the fifth amendment to the United States constitution as well as article first, § 9, of the constitution of Connecticut. Our Supreme Court has observed that, "[a]lthough the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution], include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 294, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). The defendant, however, has not separately briefed nor analyzed a double jeopardy claim under our state constitution. Accordingly, we will confine our analysis to his claim under the federal constitution. See *State* v. *Vega*, 259 Conn. 374, 384 n.15, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002).

stashes," one on the defendant's person and one in his closet, resulted from two separate investigations. The state argues that the incidents were charged separately and tried during a single trial. The state reasons that although the evidence permitted the finding that the defendant intended to sell both stashes of cocaine, the differences in purity, configuration and location between the stashes of cocaine "[support] a finding that they constituted separate stashes and separate acts of possession with the intent to distribute." The state further argues that the evidence permitted a conviction under § 21a-278 (b) for either of the incidents of possession and that there is no basis on which to interpret § 21a-278 (b) so as to foreclose the imposition of multiple punishments for separate incidents of possession.

In his principal brief, the defendant acknowledges that he did not raise this issue at the time of trial and seeks review of his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3] The claim is reviewable because the record is adequate for review, and the claim is of constitutional magnitude. "[A] defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . even if the sentence for one crime was concurrent with the sentence for the second crime. . . . Because the claim presents an issue of law, our review is plenary." (Internal quotation marks omitted.)

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

*State* v. *Brooks*, 88 Conn. App. 204, 214, 868 A.2d 778, cert. denied, 273 Conn. 933, 873 A.2d 1001 (2005).

"The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . This constitutional provision is applicable to the states through the due process cause of the fourteenth amendment. . . . The Connecticut constitution provides coextensive protection, with the federal constitution, against double jeopardy. . . . This constitutional guarantee serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 360–61, 796 A.2d 1118 (2002). The issue raised by the defendant falls within this third category; he claims that he was punished twice under § 21a-278 (b) for a single criminal act.[4]

"The double jeopardy analysis in the context of a single trial is a two part process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sen-

---

[4] The defendant's claim is distinguishable from double jeopardy clause claims that arise when a defendant is punished, under more than one distinct statutory provision, for a single act or transaction. In such a case, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

tencing court from prescribing greater punishment than the legislature intended. . . . [T]he role of the constitutional guarantee [against double jeopardy] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense. . . . On appeal, the defendant bears the burden of proving that the prosecutions are for the same offense in law and fact." (Citations omitted; internal quotation marks omitted.) Id., 361.

The state charged the defendant with possessing two separate quantities of cocaine powder, in two separate locations, on the same day. In the first count of its consolidated long form information, the state alleged in relevant part "that at the [t]own of Wethersfield on or about September 6, 2002, at or near the area of the Silas Deane Highway and Wells Road, the [defendant] did possess cocaine, a narcotic substance, with the intent to sell said cocaine and the [the defendant] was not at that time a [drug-dependent] person." In the second count, the state alleged in relevant part "that at the [t]own of Wethersfield on or about September 6, 2002, at or near 7 Spring Street, the [defendant] did possess a narcotic substance, specifically cocaine, with the intent to sell said cocaine and that [the defendant] was not at that time a [drug-dependent] person."[5]

At trial, the state presented evidence that when Morris stopped the defendant's automobile shortly after 2 p.m. on September 6, 2002, in the vicinity of the Silas Deane Highway and Wells Road in Wethersfield, the defendant possessed 87.32 grams of cocaine powder in a front pocket of his pants. The cocaine powder was separated into 120 smaller bags that were contained in

---

[5] The state initially brought each of these counts in separate informations, but moved to consolidate the separate cases for a single trial. The court granted the state's motion on the ground that the cases shared similar issues such that evidence admissible in one case would be admissible in the other case.

one large bag. The cocaine powder consisted of between 17 to 60 percent pure cocaine. The state also presented evidence that when different law enforcement personnel searched the defendant's room at the Spring Street address in Wethersfield, subsequent to the defendant's arrest, the defendant possessed 89.33 grams of cocaine powder in a mailing tube in his closet. The cocaine powder was separated into bags. One bag contained 26.73 grams of cocaine powder, separated into thirty-eight smaller bags. Another bag contained 62.60 grams of cocaine powder that was 72 percent pure cocaine.

The court instructed the jury with regard to each of the charges separately, as well as the distinct types of possession alleged in each count. The court stated: "The accused is charged in two counts. You will have noted that each charge against the accused is set forth in the information in a separate paragraph. That is legal language for saying that the accused is charged with committing two separate offenses or crimes. Each count alleges a separate crime joined for convenience of the trial in one formal charge or information." The court further instructed the jury that it had a "duty to consider each charge or count separately." The court instructed the jury, with regard to count one, that the state bore the burden of proving that the defendant knowingly possessed cocaine. The court stated: "Actually having the substance on one's person is one form of possession." The court instructed the jury, with regard to count two, that the state bore the burden of proving that the defendant constructively possessed the cocaine that was found in his closet.

We must determine whether the defendant's conduct with regard to the two stashes of cocaine reflected a single course of conduct or whether his conduct reflected distinct acts. Our analysis is complicated by the fact that possession, in itself, might more accurately

be viewed as a course of conduct, rather than as an act. *United States* v. *Forman*, 990 F. Sup. 875, 883 (E.D. Mich. 1997), aff'd, 180 F.3d 766 (6th Cir. 1999). The fact that the defendant possessed both stashes of cocaine simultaneously and within the same town, however, does not bind us to conclude that his possession of both stashes was linked to a single criminal act or transaction. Several factors lead us to conclude that, for purposes of our double jeopardy analysis, the defendant separately possessed these stashes of cocaine and, therefore, committed two criminal acts punishable by § 21a-278 (b). "Generally, courts which have considered the issue [of multiple prosecutions under controlled substance statutes] have determined that separate convictions for possession of the same controlled substance . . . will not violate the Double Jeopardy Clause if the possessions are sufficiently differentiated by time, location, or intended purpose." (Internal quotation marks omitted.) *Commonwealth* v. *Rabb*, 431 Mass. 123, 130, 725 N.E.2d 1036 (2000).

Although there was evidence that Amato had been investigating the defendant prior to September 5, 2002, for drug related activities and that Dillon immediately began investigating the defendant after speaking with Amato, there was no evidence suggesting that both stashes of cocaine were in any way related to a single drug transaction. No evidence was presented concerning the source of either of the cocaine stashes in the defendant's possession or how long the defendant possessed the stashes. The evidence, in fact, reflected that the separate stashes of cocaine were of different purities. The police did not discover the cocaine during one encounter with the defendant. Instead, one stash was discovered during a search incident to an arrest, and the other was discovered during a search of the defendant's residence. The cocaine was found by police at different times and at different locations on the same day. The

searches that yielded the cocaine in both locations were the result of separate police activity, albeit related to a single investigation initiated by Amato.

There were differences in the times at which the separate stashes of cocaine were found by police. There were also differences between the locations at which the stashes were found. More significant, however, was the manner in which the defendant possessed each stash of cocaine. Each of the charges required distinct legal instructions by the court and factual findings by the jury. Each charge was proven by separate evidence.

The jury found that the defendant transported 120 bags of cocaine in his pants pocket on September 6, 2002, while leaving another 89.33 grams of cocaine, of a different degree of purity and packaged in a different manner, in a mailing tube in his closet. That the defendant drove away from his residence transporting 120 bags of cocaine, while leaving another stash of cocaine, some of which was separated into bags and some of which was not, also reflected different purposes for each of the stashes of cocaine, albeit purposes related to sale. Such conduct made it more likely than not that the defendant intended to sell the cocaine he actually possessed in one transaction and the cocaine he constructively possessed in one or more separate transactions.

We conclude that the defendant has not demonstrated on appeal, in the first instance, that the two charges arose from the same act or transaction. He has not demonstrated on appeal that his possession of the two stashes of cocaine on September 6, 2002, was linked to a single course of conduct. Having failed to demonstrate that his convictions were for the same offense in fact, we conclude that his convictions did not put him in jeopardy twice for a single criminal act. The defendant's two criminal acts of possession were sepa-

rately punishable under § 21a-278 (b).[6] The defendant's claim fails under *Golding*'s third prong because he has not demonstrated that a constitutional violation clearly existed that clearly deprived him of a fair trial.

## II

The defendant next claims that the evidence did not support his conviction for possession of the cocaine found by the police at the Spring Street residence. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with

---

[6] General Statutes § 21a-278 (b) provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than five years nor more than twenty-five years. . . ."

" 'Narcotic substance' means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis . . . cocaine-type, coca leaves and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, isomer, derivatives or preparation thereof which is chemically equivalent or identical with any of these substances or which are similar thereto in physiological effect and which show a like potential for abuse . . . ." General Statutes § 21a-240 (30).

the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *McCoy*, 91 Conn. App. 1, 3, 879 A.2d 534, cert. denied, 276 Conn. 904, 884 A.2d 1026 (2005).

Under the relevant charging circumstances of this case, the state bore the burden of proving beyond a reasonable doubt that the defendant possessed cocaine at the Spring Street residence and that he intended to sell the cocaine. The defendant takes issue with the sufficiency of the evidence to prove the first of these elements, that he possessed the cocaine.[7]

"In order to prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the cocaine was not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Fagan*, 92

[7] The defendant moved for a judgment of acquittal on that ground at the close of the state's case-in-chief. The court denied the defendant's motion.

Conn. App. 44, 49–50, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005).

We conclude that the evidence, as well as the reasonable and logical inferences drawn from the evidence and the facts reasonably found by the jury, permitted the jury to find reasonably that the defendant possessed the cocaine found at the Spring Street residence. Dillon testified that on September 6, 2002, he conducted surveillance at 7 Spring Street, the address given to him by Amato. Dillon testified that at about 2 p.m., the defendant walked out of the residence, got into an automobile that was parked outside the residence and drove away. Theresa Ellison, an employee of the department of motor vehicles, testified that the department's records reflected that, at relevant times, the defendant's address was at 7 Spring Street in Wethersfield. Ellison also testified that addresses are provided to the department by motor vehicle operators when they apply for their motor vehicle license.

Deroehn testified that when he and other law enforcement personnel approached the residence at 7 Spring Street, they encountered Hardrick and Hardrick's grandson. Deroehn recalled that he informed Hardrick that the police were in the process of obtaining a search warrant for the residence and that he conversed with Hardrick. Deroehn testified that Hardrick told him that the defendant did not live at the residence but that he "stayed there" occasionally. Officer Craig Davis of the Wethersfield police department testified that he observed Amato's discovery of the "large postal tube," which contained cocaine, in an upstairs bedroom of the residence. Davis also testified that at the time of the discovery of the cocaine, he observed in the bedroom "items addressed to [the defendant], either personal letters or insurance policies, something to that effect." Davis testified that he did not seize this evidence, but that Dillon, in his police report, noted that these items

were observed in the bedroom. Further, Davis testified that after the defendant was arrested and was being processed at police headquarters, the defendant told him that his address was 7 Spring Street in Wethersfield. Davis indicated this address on the uniform arrest report that he prepared for the case.[8]

In addition to challenging the relevant inferences that the jury could draw from the evidence and its findings, the defendant argues that the evidence did not demonstrate that he exclusively possessed the premises where the narcotics were found. He argues that the evidence demonstrated that he was not present when the narcotics were found and that the state failed to present as evidence the mail that Davis claimed to have observed in the bedroom. The defendant also claims that there was no evidence as to how often or recently he stayed at the residence. These arguments are unavailing.

The evidence reasonably supported an inference that the defendant exercised a degree of control over the bedroom closet where the narcotics were found by the police such that he exercised dominion and control over the narcotics found there. The evidence demonstrated that the defendant was under continuous police surveillance after he departed from 7 Spring Street. The jury found in its deliberations on count one that the defendant possessed cocaine, the same illegal substance as was found at 7 Spring Street, shortly after

---

[8] The state also presented testimony from Julie Gasiorek, a correction officer employed by the department of correction. Gasiorek testified that after giving notice of the practice to inmates as well as to any persons that inmates contact via telephone from department facilities, the department monitors and records all inmate telephone conversations. The state presented recordings of several telephone conversations that transpired between the defendant, while he was incarcerated in September, 2002, and others. The state argued at trial that the defendant made "thinly veiled" references to the cocaine discovered by police at 7 Spring Street during these conversations. Those conversations added to the circumstantial evidence adverse to the defendant.

leaving 7 Spring Street, and that the defendant possessed the cocaine with the intent to sell it. These findings reasonably supported an additional finding that the defendant knew of the character and presence of the cocaine that was subsequently found by the police at 7 Spring Street. Construing the evidence and findings in the light most favorable to sustaining the verdict, we conclude that the jury's finding concerning possession was amply supported. The evidence did not demonstrate that the defendant exclusively possessed the residence at 7 Spring Street; nonetheless, other circumstances buttressed the inference that the defendant knew of the cocaine at 7 Spring Street and exercised control of it. The defendant's insufficiency of the evidence claim therefore fails.

### III

Finally, the defendant claims that the court's constructive possession instruction to the jury was inadequate. We disagree.

As we noted previously, the court delivered separate instructions for each count of possession of narcotics with the intent to sell by a person who is not drug-dependent. With regard to the second count, which pertained to the seizure of cocaine found by the police at 7 Spring Street, the court instructed the jury in relevant part: "The elements of the offense: There are two elements, each of which the state must prove beyond a reasonable doubt in order to sustain a conviction here. They are the following: One, that the defendant knowingly possessed with the intent to sell to another; two, any narcotic substance. I will now go through these elements with you one by one and explain them to you in detail.

"With respect to the first element of count two, the state must prove beyond a reasonable doubt that the defendant knowingly possessed with the intent to sell

to another. I will now discuss possession with you. . . . Possession with respect to count two means that the defendant knew of the narcotic character of the substance found at 7 Spring Street; that he knew of its presence and that he exercised dominion and control over it.

"It is not necessary, however, that the defendant actually had the substance on his person, although, that is one form of possession. It means having dominion and control over the substance even though it is not on the defendant's person. As long as the substance is in a place where it is subject to the defendant's dominion and control where the defendant can, if he wishes, go and get it, it is in his possession and that possession is illegal if the defendant knew of the narcotic character of the substance and knew of its presence.

"Possession may be actual or constructive. In a moment, I will define both of these for you. Possession, actual or constructive, may be proven by either direct or circumstantial evidence. In reference to circumstantial evidence, I have explained that concept to you, and you should apply those instructions here as well.

"Keep in mind that possession of the cocaine which has been admitted into evidence with respect to count two, state's exhibit 5a, not ownership, is all that is required. Now, actual possession is established when it is shown that the defendant had actual physical possession of the cocaine. Constructive possession is established when it is shown that the defendant exercised dominion and control over the cocaine and had actual knowledge of its presence. Remember, then, constructive possession requires a showing of two things: Control and knowledge. Constructive possession may be exclusive or shared by others. The latter is known as joint possession.

"Whether the defendant had possession of the substance in state's exhibit 5a is a question of fact for you to decide, and you may, as I have told you, draw reasonable and logical inferences from the evidence.

"Control is to be given its ordinary meaning. That is to say that the defendant is in control of the cocaine when it is shown that he exercises a direct control over it. Coupled with possession in the first element is the requirement of knowledge. The state must prove beyond a reasonable doubt that the defendant knowingly possessed cocaine. A person acts knowingly with respect to possessing cocaine when he is aware that he is in possession of the cocaine."

On appeal, the defendant claims: "Under the circumstances of this case, the court's instruction concerning constructive possession was inadequate and misleading because it failed to instruct the jury on the rule of law concerning the nonexclusive possession of the premises where the narcotics were found." The defendant correctly states that the evidence did not permit a finding that he possessed exclusively 7 Spring Street. The defendant argues: "When ownership or occupancy of the premises is shared, the jury must be instructed that it was not enough to show possession [and] that [it has] to find additional evidence that the defendant had knowledge and control of the contraband. The court was required to instruct the jury that [it] had to also find that the defendant had made an incriminating statement concerning the contraband or that there were other circumstances which tend to support the inference before [it] could find that the defendant had knowledge and control. The court's instruction failed to do this, permitting the defendant's jury to find him guilty without engaging in this additional inquiry."

This claim is unpreserved; the defendant neither objected to the court's charge on this ground, nor cov-

ered the matter in a written request to charge. Practice Book § 42-16. The defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The record affords a basis for review. The claim is of constitutional magnitude because the defendant claims that the court's instruction with regard to constructive possession was legally inadequate, thereby depriving him of his right to a fair trial. The defendant, however, has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial. See id., 240. Accordingly, the defendant's claim fails.

As a preliminary matter, we note that the defendant does not argue that the court misinstructed the jury with regard to the elements of the crime. As we stated previously, the state bore the burden of proving beyond a reasonable doubt that the defendant possessed cocaine and that the defendant intended to sell the cocaine. With regard to possession, the state bore the burden of proving beyond a reasonable doubt that the defendant knew of both the character and the presence of the cocaine found at 7 Spring Street and that he exercised dominion and control over the cocaine. See *State* v. *Fagan*, supra, 92 Conn. App. 50. Our review of the court's charge reveals that the court properly instructed the jury with regard to each of these elements of the crime.

Essentially, the defendant claims that the circumstances of this case required the court to instruct the jury with regard to the doctrine of nonexclusive possession[9] in addition to instructing the jury with regard to

---

[9] "Where the defendant is not in exclusive possession of the premises where the [illegal item is] found, it may not be inferred that [the defendant] knew of the presence of the [illegal item] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . The doctrine of nonexclusive possession was designed to prevent a jury from inferring a defendant's possession of [an illegal item] solely from the defendant's nonexclusive possession of the premises where the [illegal item was] found. . . . When the doctrine applies, an instruction focuses the jury's attention on the defendant's knowledge and intent to

the elements of the crime.[10] Our Supreme Court has applied the doctrine of nonexclusive possession in cases in which the doctrine was applicable and the sufficiency of the evidence of possession was at issue. *State* v. *Berger*, 249 Conn. 218, 225–26, 733 A.2d 156 (1999) (holding evidence of possession sufficient); *State* v. *Alfonso*, 195 Conn. 624, 633–35, 490 A.2d 75 (1985) (holding evidence of possession insufficient as to one of two counts on which defendant convicted). Our Supreme Court has held that, where warranted, a jury instruction concerning the doctrine was proper. *State* v. *Delossantos*, 211 Conn. 258, 276–78, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). Our Supreme Court has also deemed a court's refusal to deliver an instruction concerning the doctrine, in cases in which such an instruction was requested by the accused, to be proper when the doctrine was inapplicable to the evidence and issues before the jury. *State* v. *Williams*, 258 Conn. 1, 15–16, 778 A.2d 186 (2001); *State* v. *Nesmith*, 220 Conn. 628, 632–36, 600 A.2d 780 (1991).

"[A] *request to charge* which is relevant to the issues of the case and which is an accurate statement of the

possess, precluding it from inferring possession from the mere fact that the defendant, along with others, occupied or had access to the premises wherein the contraband was found." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 7–8, 778 A.2d 186 (2001). Stated otherwise, "[t]he doctrine of nonexclusive possession provides that where there exists access by two or more people to the [contraband] in question, there must be something more than the mere fact that [contraband was] found to support the inference that the [contraband was] in the possession or control of the defendant. . . . Thus, the charge is appropriate in circumstances where the defendant has possession of the premises along with at least one other individual." (Citation omitted; internal quotation marks omitted.) Id., 11.

[10] In the context of this claim, the defendant also claims that the court improperly referred to joint possession in its charge. We conclude that it was not reasonably possible that the court's isolated reference to joint possession misled the jury.

law must be given." (Emphasis added; internal quotation marks omitted.) *State* v. *Nesmith*, supra, 220 Conn. 632. Our Supreme Court has implicitly drawn an analogy between a theory of defense instruction and an instruction on the doctrine of nonexclusive possession. *State* v. *Williams*, supra, 258 Conn. 8. "[I]f the defendant asserts a recognized legal defense and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to a theory of defense instruction . . . ." (Internal quotation marks omitted.) Id. Our appellate courts have imposed an affirmative duty on the trial court to deliver theory of defense instructions only in limited circumstances. See *State* v. *Cruz*, 75 Conn. App. 500, 510, 816 A.2d 683 (2003), aff'd, 269 Conn. 97, 848 A.2d 445 (2004).

Even if we assume arguendo that the evidence in this case warranted an instruction with regard to the doctrine of nonexclusive possession, the court's failure to deliver such an instruction on its own initiative, absent a request to charge, would constitute a constitutional violation only if the court was obligated to deliver such an instruction when it is warranted by the evidence in a case before it. The defendant's claim is premised on the proposition that such a duty exists. The defendant has not cited any authority in support of this proposition, and we are unable to find any. There is authority contrary to the defendant's claim. Due process is implicated by a court's failure to instruct the jury on the essential elements of the crime charged; see *State* v. *Preyer*, 198 Conn. 190, 197, 502 A.2d 858 (1985); but "[a] trial court has no independent obligation to instruct, sua sponte, on general principles of law relevant to all issues raised in evidence . . . . Rather, it is the responsibility of the parties to help the court in fashioning an appropriate charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Arena*, 235 Conn. 67, 75, 663 A.2d 972 (1995). "The ever increasing refinement of

our law justifies the cooperation of counsel in stating requests for jury instructions . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, 212 Conn. 593, 612, 563 A.2d 671 (1989). This is not a case in which the court declined to deliver a requested instruction. Under the facts of this case, we conclude that the defendant has not demonstrated that a constitutional violation clearly existed that clearly deprived him of a fair trial. The claim fails under *Golding*'s third prong.

The judgments are affirmed.

In this opinion the other judges concurred.