******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* CHEVALIER TERRELL PURVIS
## (AC 46058)

Alvord, Seeley and Bear, Js.

### *Syllabus*

Convicted of the crimes of, inter alia, possession of a controlled substance with intent to sell by a person who is not drug-dependent, possession of a controlled substance, and possession of drug paraphernalia with intent to use, the defendant appealed to this court. The defendant was arrested during an investigation and search of an apartment. When the police entered the apartment, the defendant turned and ran down a hallway, dropping six small bags of crack cocaine, which were individually wrapped in plastic. He then fled to a bathroom, where he was found attempting to ingest narcotics, which the arresting police officer forced him to spit out. The narcotics that fell out of the defendant's mouth were six pieces of cocaine, each wrapped in plastic, and two glassine bags containing a mixture of heroin and fentanyl. *Held*:

1. The defendant could not prevail on his claim that the evidence adduced at trial was insufficient to sustain his conviction of possession of a controlled substance with intent to sell: contrary to the defendant's argument, there was no requirement that an individual must have possessed a certain quantity of narcotics to support a finding of an intent to sell; moreover, the fact that the state did not present any evidence establishing that the defendant had engaged in a sale of narcotics was not dispositive of a lack of intent to sell; furthermore, the state presented sufficient circumstantial evidence to support an inference that the defendant intended to sell the narcotics found in his possession, as it was undisputed that the defendant was present in a location known as a crack house that was associated with narcotics dealing and use, that he was in the company of four individuals known to law enforcement as drug users, and he was in the possession of fourteen individually packaged units of narcotics and $2126 in cash.

2. The defendant could not prevail on his claim that there was insufficient evidence to sustain his conviction of possession of drug paraphernalia with intent to use: although the defendant claimed that the pieces of plastic surrounding the bits of crack cocaine were not "bags" and, thus, could not constitute drug paraphernalia as defined in the statute (§ 21a-240 (2) (A)), the state repeatedly referred to the plastic wrappings as plastic bags throughout the trial, § 21a-240 (2) (A) does not require that the paraphernalia constitute a bag, and the plastic wrapping material in this case, which was tied in a knot at the top and used as a means to contain the bits of crack cocaine, constituted "materials of any kind" that contained a "controlled substance" pursuant to § 21a-240 (2) (A);

moreover, even if this court assumed without concluding that the plastic did not constitute drug paraphernalia under the statute, the defendant's claim was unavailing as the defendant was also found in possession of two glassine bags, which he used to hold or contain narcotics and which fell within the definition of drug paraphernalia under § 21a-240 (2) (A); furthermore, contrary to the defendant's claim, the plain language of § 21-240 (20) (A) did not exempt from its coverage individual bags used to contain the very narcotics the defendant was found to have possessed.

3. This court concluded that the defendant's conviction of both possession of a controlled substance with intent to sell and possession of a controlled substance, violated his constitutional protection against double jeopardy and deprived him of a fair trial: because possession of a controlled substance is a lesser included offense of the crime of possession of a controlled substance with intent to sell, the charged crimes are the same offense for double jeopardy analysis; moreover, the conduct charged in those counts arose out of the same act or transaction, as the jury could not reasonably have found that the defendant committed a separate act of possession of controlled substances when he ran into the bathroom carrying some of the same narcotics that he had possessed in the kitchen/hallway area; furthermore, the state, in its charging documents, its overall presentation of the case and in the evidence adduced at trial, did not draw a distinction between the defendant's conduct inside and outside of the bathroom with respect to the defendant's possession of narcotics.

Argued March 13—officially released August 6, 2024

*Procedural History*

Substitute information charging the defendant with the crimes of possession of a controlled substance with intent to sell by a person who is not drug-dependent, possession of a controlled substance, possession of drug paraphernalia with intent to use, conspiracy to possess a controlled substance with intent to sell, and interfering with an officer, brought to the Superior Court in the judicial district of Danbury, geographical area number three, and tried to the jury before *Pavia, J.*; verdict and judgment of guilty of possession of a controlled substance with intent to sell by a person who is not drug-dependent, possession of a controlled substance, possession of drug paraphernalia with intent to use, and interfering with an officer, from which the

defendant appealed to this court. *Reversed in part*; *judgment directed in part*.

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*Alexander A. Kambanis*, deputy assistant state's attorney, with whom, on the brief, were *David R. Applegate*, state's attorney, and *Matthew Knopf*, assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Chevalier Terrell Purvis, appeals from the judgment of conviction, rendered after a jury trial, of possession of a controlled substance with intent to sell by a person who is not drug-dependent[1] in violation of General Statutes § 21a-278 (b) (1) (A), possession of a controlled substance in violation of General Statutes (Rev. to 2017) § 21a-279 (a) (1),[2] possession of drug paraphernalia with intent to use in violation of General Statutes (Rev. to 2017) § 21a-267 (a),[3] and interfering with an officer in violation of General Statutes (Rev. to 2017) § 53a-167a. On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to sustain his conviction of possession of a controlled substance with intent to sell and possession of drug paraphernalia with intent to use, and (2) if his conviction of possession of a controlled substance with intent to sell is upheld, then his conviction of both possession of a controlled substance with intent to sell and possession of a controlled substance violates his constitutional protection against double jeopardy. We

---

[1] Because the defendant's drug dependency is not at issue, for convenience we refer to this crime as possession of a controlled substance with intent to sell.

[2] In this opinion, our references to § 21a-279 (a) (1) are to the 2017 revision of the statute.

[3] In this opinion, our references to § 21a-267 (a) are to the 2017 revision of the statute.

agree with the defendant as to his second claim and, accordingly, affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts based on the evidence presented at trial. On October 11, 2018, police officers assigned to the special investigations division of the Danbury Police Department executed a search warrant at an apartment located at 12 Bank Street in Danbury (premises). Law enforcement suspected that the premises was being used as a "crack house" by the person living there, Christopher Maloney. Upon entering the premises, the officers found five individuals—Maloney, the defendant, and three other persons. Maloney and the three other individuals were known to law enforcement as "drug users." The defendant and Maloney were standing in the kitchen/hallway area of the premises, while the other three individuals were seated in an area described as a living room. Sergeant Stephen Hilderbrand of the Danbury Police Department observed the defendant turn and run down the hallway, dropping several items along the way as he fled to a bedroom and then a bathroom and attempted to barricade himself inside. Hilderbrand, however, pursued the defendant into the bathroom and found him attempting to ingest narcotics. Hilderbrand wrestled the defendant into the bathtub and forced the defendant to spit out the narcotics that he was attempting to swallow. Thereafter, the defendant was handcuffed and searched. The search of his person revealed that the defendant was in possession of car keys, a wallet containing $1970 in cash, $156 in cash in his pocket, a multitool,[4] a bag of marijuana, a cell phone and cigarettes. The police subsequently conducted a search of the premises.

---

[4] The multitool seized from the defendant is an object approximately five and one-half inches long that resembles a hammer and contains a hammer, knife, wrench, can opener and pliers.

The narcotics that fell out of the defendant's mouth in the bathtub consisted of six "small, white rock-like substances" that each were "tightly wrapped into small slivers of plastic," which later were determined to contain cocaine, as well as two glassine bags that each contained a mixture of heroin and fentanyl. The items the defendant dropped in the kitchen/hallway area similarly consisted of six "small bags of crack cocaine," each of which was individually wrapped in plastic. In all, the police seized fourteen individually packaged narcotics from the defendant. The nature of those substances was confirmed through testing performed by a state forensic examiner.[5] The police also seized from the bedroom in the premises empty clear plastic bags.[6]

Following his arrest, the defendant was charged in an amended long form information with possession of a controlled substance with intent to sell in violation of § 21a-278 (b) (1) (A), possession of a controlled substance in violation of § 21a-279 (a) (1), possession of drug paraphernalia with intent to use in violation of § 21a-267 (a), conspiracy to possess a controlled substance with intent to sell in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b) (1) (A), and interfering with an officer in violation of § 53a-167a. A jury trial was held, at which the state presented testimony from Hilderbrand; Joanna Urban, the state forensic examiner who tested the substances; Detective Kevin Zaloski of the Danbury Police Department, who was the lead

---

[5] Specifically, the forensic examiner testified as to the nature of the substances recovered from the bathtub. Those substances consisted of 1.220 grams of cocaine, including packaging, and 0.061 grams of heroin and fentanyl in a knotted plastic bag. The forensic examiner also testified as to the nature of the substances found in the kitchen/hallway area, which consisted of 0.880 grams of cocaine, including packaging.

[6] The police also seized from the bedroom a note that was on a dresser, which read, "Criss send the ha[l]f bag with Michael; now or she call the cops for us. Tiger." The defendant stipulated at trial that he went by the nickname Tiger.

investigator for the search warrant; and Detective Mark Traholis, the evidence officer in connection with the search who provided expert testimony concerning narcotics activities. The defendant testified in his own defense. At the conclusion of the trial, the defendant was found not guilty of the conspiracy charge and guilty of the remaining four charges. On September 12, 2022, the court sentenced him to a period of incarceration of twelve years, execution suspended after six years, five of which are a mandatory minimum, and five years of probation.[7] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the evidence adduced at trial was insufficient to establish his guilt for the offenses of possession of a controlled substance with intent to sell and possession of drug paraphernalia with intent to use. We disagree.

We first set forth the relevant standard of review for a sufficiency of the evidence challenge. "As this court has observed, [a] defendant who asserts an insufficiency of evidence claim bears an arduous burden." (Internal quotation marks omitted.) *State* v. *Shawn G.*, 208 Conn. App. 154, 158, 262 A.3d 835, cert. denied, 340 Conn. 907, 263 A.3d 822 (2021). "When a criminal conviction is reviewed for the sufficiency of the evidence, we apply a well established [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether

___

[7] For the defendant's conviction of possession of a controlled substance with intent to sell, the court sentenced the defendant to twelve years of incarceration, execution suspended after six years, and five years of probation. The court also sentenced the defendant to concurrent 364 day terms for his conviction of the charges of possession of a controlled substance and interfering with an officer, and imposed a $150 fine for his conviction of the charge of possession of drug paraphernalia with intent to use.

upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . As we previously have explained, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Fisher*, 342 Conn. 239, 249, 269 A.3d 104 (2022); see also *State* v. *Kyle A.*, 212 Conn. App. 239, 246, 274 A.3d 896 (2022) ("We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the [fact finder's] opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . We are content to rely on the [fact finder's] good sense and judgment." (Internal quotation marks omitted.)), aff'd, 348 Conn. 437, 307 A.3d 249 (2024).

We also must be mindful that "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Jones*, 210 Conn. App. 249, 256–57, 269 A.3d 870, cert.

denied, 343 Conn. 901, 272 A.3d 199 (2022). Further-
more, "[w]e emphasize that the probative force of the
evidence is not diminished because it consists, in whole
or in part, of circumstantial evidence rather than direct
evidence. . . . It has been repeatedly stated that there
is no legal distinction between direct and circumstantial
evidence so far as probative force is concerned. . . .
It is not one fact, but the cumulative impact of a multi-
tude of facts which establishes guilt in a case involving
substantial circumstantial evidence." (Internal quota-
tion marks omitted.) *State* v. *Kyle A.*, supra, 212 Conn.
App. 255.

A

We first address the defendant's sufficiency of the
evidence claim with respect to his conviction of posses-
sion of a controlled substance with intent to sell in
violation of § 21a-278 (b) (1) (A).[8] The defendant argues
that there was insufficient evidence to sustain his con-
viction under this statute because the evidence pre-
sented failed to establish the requisite intent to sell
beyond a reasonable doubt. To support his argument,
the defendant points out that there was no evidence
presented that he had engaged in a sale of narcotics
and claims any circumstantial evidence is irrelevant in
the absence of such proof. Similarly, he claims that any
narcotics found in his possession were for personal use
only and that the total quantity of the narcotics found
on him was inconsistent with an intent to sell. We do
not agree.

"To prove its case [of a violation of § 21a-278 (b)],
the state must prove beyond a reasonable doubt that (1)

___

[8] General Statutes § 21a-278 (b) (1) provides in relevant part: "No person
may manufacture, distribute, sell, prescribe, dispense, compound, transport
with the intent to sell or dispense, possess with the intent to sell or dispense,
offer, give or administer to another person, except as authorized in this
chapter or chapter 420f, (A) a narcotic substance . . . ."

the defendant possessed a substance, (2) the substance was a narcotic and (3) the defendant intended to sell it." (Internal quotation marks omitted.) *State* v. *Bruno*, 293 Conn. 127, 136, 975 A.2d 1253 (2009).[9] The defendant's claim in the present case focuses on the intent element. "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). "It is well established that [i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Stovall*, 316 Conn. 514, 520–21, 115 A.3d 1071 (2015); see also *State* v. *Nash*, 316 Conn. 651, 672, 114 A.3d 128 (2015) ("The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence . . . and is, except in rare cases, a question of fact." (Internal quotation marks omitted.)).

Circumstantial evidence that is probative of a defendant's intent to sell narcotics includes evidence of the "quantity of narcotics found in the defendant's possession . . . the manner in which the narcotics are packaged [and] [e]vidence demonstrating that the defendant was present in a known drug trafficking area . . . ."

---

[9] "The law . . . is clear that the absence of drug dependency is not an element of the offense of sale of narcotics under § 21a-278 (b)." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Walker*, 90 Conn. App. 737, 740, 881 A.2d 406, cert. denied, 275 Conn. 930, 883 A.2d 1252 (2005).

(Internal quotation marks omitted.) *State* v. *Billie*, 123 Conn. App. 690, 704, 2 A.3d 1034 (2010). Also relevant to the issue of an intent to sell is the "amount of . . . cash the defendant possessed . . . ." (Internal quotation marks omitted.) *State* v. *Garcia*, 108 Conn. App. 533, 539, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008). Additionally, a defendant's possession of a weapon at the time of the arrest is circumstantial evidence that can support a jury's finding of an intent to sell. See *State* v. *Avila*, 166 Conn. 569, 580, 353 A.2d 776 (1974) ("[i]t may reasonably be inferred that an armed possessor of drugs has something more in mind than mere personal use" (internal quotation marks omitted)).

Contrary to the defendant's argument, evidence of a sale or transaction is not required to satisfy the intent to sell element of a charge pursuant to § 21a-278 (b) (1) (A). See *State* v. *Jimenez*, 73 Conn. App. 664, 667–68, 808 A.2d 1190 (affirming conviction pursuant to § 21a-278 (b) (1) (A) when only evidence presented was plastic bag of cocaine found in backseat of police cruiser after defendant's transport to police station), cert. denied, 262 Conn. 929, 814 A.2d 381 (2002); see also *State* v. *Francis*, 90 Conn. App. 676, 682–83, 879 A.2d 457 (concluding that evidence was sufficient to support conviction of possession of narcotics with intent to sell within 1500 feet of school when no sale was alleged to have been made), cert. denied, 275 Conn. 925, 883 A.2d 1248 (2005). Moreover, given that intent "usually is inferred from conduct," it follows that the lack of evidence of a sale is simply one of "a multitude of facts" that a jury may consider in reaching its conclusion. (Internal quotation marks omitted.) *State* v. *Billie*, supra, 123 Conn. App. 704. Therefore, in the present case, the fact that the state did not present any evidence establishing that the defendant had engaged in a sale of narcotics is not dispositive of a lack of intent to sell.

With respect to the defendant's argument that the amount of narcotics he possessed was not consistent with an intent to sell, there is no requirement that a defendant must have possessed a certain quantity of narcotics to support a finding of an intent to sell. See *State* v. *Jeffreys*, 78 Conn. App. 659, 676–77, 828 A.2d 659 (acknowledging that "[t]he quantity of drugs is not . . . the sole dispositive factor" because intent can be inferred through circumstantial evidence), cert. denied, 266 Conn. 913, 833 A.2d 465 (2003), overruled in part on other grounds by *State* v. *Polanco*, 308 Conn. 242, 248, 253, 61 A.3d 1084 (2013). "Moreover, [a] large number of packets in the defendant's possession is [a] fact from which the inference of possession with intent to sell can be drawn." *State* v. *Bowens*, 24 Conn. App. 642, 649, 591 A.2d 433, cert. denied, 220 Conn. 906, 593 A.2d 971 (1991).

The defendant relies on *Billie* in support of his argument that an intent to sell cannot be found based on the quantity of narcotics he possessed. *Billie*, however, is inapposite to the present case, as the defendant in *Billie* possessed only "a single package" of narcotics; *State* v. *Billie*, supra, 123 Conn. App. 704; whereas, in the present case, the defendant was in possession of fourteen individually packaged units of narcotics. Significantly, the amount of narcotics in the defendant's possession in the present case exceeds the quantity of narcotics possessed by defendants in similar cases in which this court has determined that the evidence was sufficient for the jury to infer that the defendant intended to sell narcotics. See *State* v. *Jeffreys*, supra, 78 Conn. App. 676–77 ( where defendant possessed two "separate, small plastic bags" of cocaine, "the evidence was sufficient to permit the fact finder reasonably to find that the defendant possessed the intent to sell the drugs found in his possession"); *State* v. *Clark*, 56 Conn. App. 108, 111, 113, 741 A.2d 331 (1999) (defendant's

possession of "cellophane wrapper containing seven pieces of crack cocaine and three small bags of heroin" was sufficient evidence of intent to sell); *State* v. *Conley*, 31 Conn. App. 548, 551, 561, 627 A.2d 436 (defendant's possession of six glassine packets of heroin was sufficient to establish intent to sell), cert. denied, 227 Conn. 907, 632 A.2d 696 (1993); see also *State* v. *Abreu*, 34 Conn. App. 629, 631, 634, 643 A.2d 871 (affirming conviction of possession of narcotics with intent to sell when defendant possessed ball of white powder cocaine wrapped in cellophane that weighed 2.2 grams), cert. denied, 230 Conn. 915, 645 A.2d 1019 (1994).[10]

In the present case, the state presented sufficient circumstantial evidence to support an inference that the defendant intended to sell the narcotics found in his possession. It is undisputed that, at the time of his arrest, the defendant was present in a location known as a crack house that is associated with narcotics dealing and use, and he was in the company of four individuals known to law enforcement as drug users. He was also in possession of fourteen individually packaged units of narcotics, an object described as a multitool and $2126 in cash. Further, Trohalis, an expert witness for the state, testified that low-level narcotics dealers generally carry large amounts of cash and smaller quantities of packaged narcotics, that a "crack house" is a location where addicts know they can find a dealer to purchase narcotics from, and that the defendant was the only individual at the location with narcotics found on his person. During the state's cross-examination of the defendant, he answered affirmatively when asked if he brought $2000 in cash with him to "that crack den."

As we have stated, "[p]roof of intent is usually established through circumstantial evidence, from which the

---

[10] We note that the amount of narcotics that the defendant possessed in *Abreu* is comparable to the amount involved in the present case. See footnote 5 of this opinion.

[jury] may draw reasonable and logical inferences." (Internal quotation marks omitted.) *State* v. *Brown*, 90 Conn. App. 835, 840, 879 A.2d 466, cert. denied, 276 Conn. 901, 844 A.2d 1026 (2005). Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have inferred from the defendant's possession of fourteen individually packaged units of narcotics, a large sum of cash and a multitool,[11] at a location associated with drug dealing in the company of known addicts who themselves did not possess any narcotics, that he intended to sell the narcotics in his possession. See *State* v. *Williams*, 110 Conn. App. 778, 792, 956 A.2d 1176 (evidence sufficient to support conviction of possession of narcotics with intent to sell when defendant possessed "forty-three individually packaged bags that contained various forms of cocaine," state's expert witness testified that manner in which cocaine was packaged and amount of cocaine defendant possessed "were consistent with packaging for sale, rather than for personal use," and "defendant was arrested in an area known for drug activity"), cert. denied, 289 Conn. 957, 961 A.2d 424 (2008); *State* v. *Clark*, supra, 56 Conn. App. 110–13 (sufficient circumstantial evidence existed to demonstrate that defendant intended to sell narcotics when evidence showed that defendant possessed "$205 in mostly $10 and $20 bills," "seven pieces of crack

---

[11] Construing the evidence in the light most favorable to upholding the verdict, we conclude that the jury reasonably could have inferred that the multitool in the defendant's possession was meant to serve as a weapon. See *State* v. *Ryan*, 23 Conn. Supp. 425, 428–29, 184 A.2d 183 (1962) ("[a]rticles which are manufactured and generally used for peaceful and proper purposes, such as baseball bats, axes, hammers, ordinary pocketknives, razors, or other articles too numerous to mention, may become dangerous or deadly weapons when they are used or carried for the purpose of assault or defense"); see also *State* v. *Ramos*, 271 Conn. 785, 789–90, 798, 860 A.2d 249 (2004) (evidence was sufficient to support conviction for having weapon in motor vehicle where defendant used hammer in vehicle during altercation).

cocaine and three small bags of heroin," and was present in high drug trafficking area). This view of the evidence is entirely reasonable and supports the jury's guilty verdict on this charge. See *State* v. *Fisher*, supra, 342 Conn. 249. Accordingly, the evidence was sufficient to support the defendant's conviction of possession of a controlled substance with intent to sell.

B

The defendant next claims that the evidence was insufficient to support his conviction under count three of possession of drug paraphernalia with intent to use in violation of § 21a-267 (a).[12] The defendant's claim is premised on his assertion that the evidence presented was not sufficient to establish that he was in possession of drug paraphernalia. Specifically, the defendant claims that the court's jury instruction "limited the definition of 'drug paraphernalia' to encompass only packaging materials,"[13] and that there was no evidence that he was actively or constructively in possession of any packaging materials. The state counters that the jury was "within its prerogative to find [the defendant] guilty

[12] General Statutes (Rev. to 2017) § 21a-267 (a) provides in relevant part: "No person shall use or possess with intent to use drug paraphernalia, as defined in subdivision (20) of section 21a-240, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal, or to ingest, inhale or otherwise introduce into the human body, any controlled substance, as defined in subdivision (9) of section 21a-240, other than a cannabis-type substance in a quantity of less than one-half ounce. . . ."

[13] We note that, during the trial, there were several references to broken, smaller glass pipes that are used to consume crack cocaine, which were found in and around the premises. The amended long form information, however, alleged that the defendant "possessed with the intent to use drug paraphernalia, to prepare, pack, repack, store, contain and conceal any controlled substance, in violation of . . . § 21a-267 (a)." Additionally, the court's jury charge defined drug paraphernalia to include material used "to prepare, pack, repack, store, contain or conceal any controlled substance other than cannabis." Accordingly, count three was not prosecuted under a theory that the drug paraphernalia possessed by the defendant included the broken pipes.

on count three vis-à-vis the plastic bags that contained his narcotics." The state also argues that the jury reasonably could have found that the defendant constructively possessed the larger plastic bags found in the bedroom, which, the state contends, the defendant was using "to package his narcotics into smaller, sellable units." Thus, according to the state, the jury could have based its guilty verdict with respect to this charge on either "the plastic bags that contained his narcotics" or "the empty plastic bags . . . that were discovered inside the bedroom."

In his appellate reply brief, the defendant responds by making the following argument: "The . . . bits of plastic wrap [surrounding the various bits of crack cocaine] were not 'bags' and do not qualify as 'paraphernalia' under the meaning of the statute. . . . Arguably, the pile of empty plastic bags in . . . Maloney's bedroom ([exhibit 16]) that the prosecutor pointed to as comprising drug paraphernalia *would* constitute drug paraphernalia, but they were never tied to [the defendant] and that is not what the defendant was found to have possessed. All [the defendant] possessed by way of 'containers' was the slivers of plastic wrap on the individual bits of crack, and the two *glassine envelopes* holding the . . . heroin. . . . It makes no sense that wrappings of individual 'doses' . . . would constitute 'paraphernalia.' . . . The defendant respectfully submits that it is not a sensible reading of the statute to conclude that an individual container or wrapping is 'paraphernalia' within the meaning of the Model Drug Paraphernalia Act and as defined in [General Statutes § 21a-240 (20)]." (Emphasis altered.) We disagree.

The following additional facts and procedural history are relevant to our analysis of this issue. As we stated previously in this opinion, the defendant was found to be in possession of the narcotics that fell out of his mouth in the bathtub, which consisted of six "small,

white rock-like substances" that were each "tightly wrapped into small slivers of plastic" and later were determined to contain cocaine, as well as two glassine bags that each contained a mixture of heroin and fentanyl. The items the defendant dropped in the kitchen/hallway area similarly consisted of six "small bags of crack cocaine," each of which was individually wrapped in plastic. The police also seized from the bedroom in the premises empty clear plastic bags. In the amended long form information charging the defendant with, inter alia, possession of drug paraphernalia with intent to use, the state alleged the following: "[I]n the city of Danbury, in the area of #12 Bank Street, on or about October 11, 2018, at approximately 6:50 p.m., [the defendant] possessed with the intent to use drug paraphernalia, to prepare, pack, repack, store, contain and conceal any controlled substance . . . ."

With respect to this charge, the court instructed the jury in relevant part as follows: "The defendant is charged in count three with possessing with intent to use drug paraphernalia. The statute defining this offense reads in pertinent part as follows: No person shall possess with the intent to use drug paraphernalia to prepare, pack, repack, store, contain or conceal any controlled substance other than cannabis. Again, this is one of the times where I've indicated to you there were alternative methods given by the state. . . . For you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the defendant possessed with intent to use drug paraphernalia. The drug paraphernalia must have been used to prepare, pack, repack, store, contain or conceal any controlled substance other than cannabis. . . . The state must prove beyond a reasonable doubt that the defendant knew that he was in possession of the drug paraphernalia. The defendant must have specifically intended that the object was to be used to prepare,

pack, repack, store, contain or conceal a controlled substance. . . . In conclusion, the state must prove beyond a reasonable doubt that the defendant possessed with the intent to use drug paraphernalia to prepare, pack, repack, store, contain or conceal a controlled substance."

During deliberations, the jury sent a note to the court asking: "Are the bags that contain the controlled substances . . . considered drug paraphernalia?" Due to their prior knowledge of the judge's unavailability at the time, the parties had agreed that, "if there was a note . . . that could be answered by both attorneys, without the need for [the court's] involvement, they would do that . . . ." Therefore, the parties agreed to the following answer: "[W]ith regard to your question, please refer to the jury instructions. Any further questions, please send another note." No further questions were submitted by the jury.

A conviction pursuant to § 21a-267 (a) requires the state to prove beyond a reasonable doubt that the defendant was in possession of drug paraphernalia. Our determination of whether the materials possessed by the defendant constitute drug paraphernalia for purposes of § 21a-267 (a) involves a matter of statutory interpretation, which concerns a question of law over which this court exercises plenary review. See *National Bank Trust* v. *Yurov*, 223 Conn. App. 637, 643, 309 A.3d 1259, cert. denied, 348 Conn. 961, 312 A.3d 37 (2024). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or

unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Avon* v. *Sastre*, 224 Conn. App. 155, 167, 312 A.3d 40, cert. denied, 349 Conn. 905, 312 A.3d 1058 (2024).

We first look at the text of the statute. Although the definition of drug paraphernalia in § 21a-240 (20) (A)[14] is expansive, the state limited the statutory definition in the amended long form information. Relevant to the present case, therefore, the statute provides in relevant part that " '[d]rug paraphernalia' means equipment, products and materials of any kind that are used, intended for use or designed for use in . . . packaging, repackaging, storing, containing or concealing . . . any controlled substance . . . ." General Statutes § 21a-240 (20) (A). Consistent with that definition, the trial court in the present case limited the jury's consideration of drug paraphernalia to those items that are used to "prepare, pack, repack, store, contain or conceal any controlled substance other than cannabis." The statute, however, does not further define the terms "prepare, pack, repack, store, contain or conceal . . . ." General Statutes § 21a-240 (20) (A). "[I]n the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . *Braasch* v. *Freedom of Information Commission*, 218

---

[14] Although § 21a-240 (20) (A) was amended by No. 22-108, § 2, of the 2022 Public Acts and No. 23-79, § 1, of the 2023 Public Acts, those amendments have no bearing on this appeal. For convenience, we refer to the current revision of the statute.

Conn. App. 488, 510, 292 A.3d 711 (2023); see also General Statutes § 1-1 (a) ([i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language).” (Internal quotation marks omitted.) *Avon* v. *Sastre*, supra, 224 Conn. App. 169. The term “contain” is defined in Merriam-Webster’s Collegiate Dictionary as “to have within: hold . . . .” Merriam-Webster’s Collegiate Dictionary (11th Ed. 2014) p. 269.

On appeal, the defendant first argues that the pieces of plastic wrap surrounding the bits of crack cocaine were not “bags” and, thus, cannot constitute drug paraphernalia under the statute. The state counters that the “plastic wrappings were repeatedly referred to as plastic bags throughout the trial.” (Emphasis omitted.) First, the record supports the state’s contention regarding the repeated references, by both the state and the defense, to the “plastic bags” containing the narcotics that were dropped by the defendant in the kitchen/hallway area and that were recovered from him in the bathroom. Second, we note that the statute does not require that the paraphernalia constitute a bag; instead, all that is required for it to be drug paraphernalia under the statute as charged in this case is that it was used to “prepare, pack, repack, store, contain or conceal any controlled substance other than cannabis . . . .” Photographs of those plastic bags or wrappings that were entered into evidence demonstrate that the plastic, which was tied in a knot at the top, was used as a means to contain the bits of crack cocaine. These bags or plastic wrappings, albeit small, undeniably were used to pack, store or contain narcotics within the meaning of § 21a-240 (20) (A), which pertains to “equipment, products and *materials of any kind* that are used, intended for use or designed for use in . . . packaging, repackaging, storing, containing or concealing . . . any controlled substance . . . .” (Emphasis added.)

Nevertheless, even if we were to assume without concluding that they do not constitute drug paraphernalia under the statute, the defendant also was found in possession of two glassine bags, each of which contained a mixture of heroin and fentanyl, which the defendant acknowledged in his appellate reply brief. Glassine bags are commonly used to package and sell narcotics; see *State* v. *Elijah*, 42 Conn. App. 687, 690, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996); and are considered to be drug paraphernalia. See *State* v. *Rosario*, 238 Conn. 380, 383, 680 A.2d 237 (1996); *State* v. *DeFusco*, 224 Conn. 627, 644–45, 620 A.2d 746 (1993); *State* v. *Slaughter*, 151 Conn. App. 340, 344, 95 A.3d 1160, cert. denied, 314 Conn. 916, 100 A.3d 405 (2014); *State* v. *Hernandez*, 53 Conn. App. 706, 709, 736 A.2d 137 (1999), aff'd, 254 Conn. 659, 759 A.2d 79 (2000). The glassine bags, which were used by the defendant to hold or contain narcotics, fall within the definition of drug paraphernalia under the statute and provided by the court; therefore, the defendant's claim is unavailing.

The defendant further argues that "it is not a sensible reading of the statute to conclude that an individual container or wrapping is 'paraphernalia' within the meaning of the Model Drug Paraphernalia Act and as defined in . . . § 21a-267 (a)." The state, in response, points to the broad language of § 21a-240 (20) (A) and argues that "the plastic bags at issue squarely fall within the definition of paraphernalia provided for in § 21a-240 (20) (A), insofar as these bags were expressly used to package, repackage, store, contain, and/or conceal the defendant's crack cocaine." We agree with the state.

The definition of drug paraphernalia in § 21a-240 (20) (A) is based on the Model Drug Paraphernalia Act; S. Gersten, "Drug Paraphernalia: Illustrative of the Need for Federal-State Cooperation in Law Enforcement in an Era of New Federalism," 26 Sw. U. L. Rev. 1067,

1079 n.80 (1997); which was "promulgated in 1979 by the Drug Enforcement Administration in an effort to help local governments draft legislation to deal with the problem of drug paraphernalia retailers"; *United States* v. *Main Street Distributing, Inc.*, 700 F. Supp. 655, 661 (E.D.N.Y. 1988); and adopted by a majority of states. See N. Golding, "The Needle and the Damage Done: Indiana's Response to the 2015 HIV Epidemic and the Need to Change State and Federal Policies Regarding Needle Exchanges and Intravenous Drug Users," 14 Ind. Health L. Rev. 173, 188 (2017) (noting that thirty-seven states and Washington, D.C., have adopted drug paraphernalia statutes based on the Model Drug Paraphernalia Act). Notably, other states that have adopted drug paraphernalia statutes based on the Model Drug Paraphernalia Act and have similar definitions of drug paraphernalia as the one in § 21a-240 (20), have construed those statutes in a manner consistent with the position advanced by the state in the present case, namely, that individual bags containing narcotics and/ or residue do in fact constitute drug paraphernalia. See *Heydenrich* v. *State*, 379 S.W.3d 507, 512 (Ark. App. 2010) ("[t]he discovery of the baggies containing drugs and drug residue on [the defendant's] person consti- tutes substantial evidence to support the possession- of-drug-paraphernalia conviction"); *State* v. *Boone*, 108 Ohio App. 3d 233, 238, 670 N.E.2d 527 (1995) (holding that plastic bag or bags containing marijuana or residue were containers under drug paraphernalia statute and noting that, "[t]hough the result—that the possession of the *drug itself* is a minor misdemeanor, while posses- sion of the bag in which it is carried is a misdemeanor of the fourth degree—is absurd, this particular absurdity must have been intended by the legislature, and we cannot depart from the plain meaning of the statute" (emphasis in original)); see also *Ramirez* v. *United States*, 49 A.3d 1246, 1250–51 (D.C. 2012) (trial court's

instruction that jury could convict for possession of drug paraphernalia based on single ziplock bag containing cocaine was not based on incorrect statement of law); *A.B.* v. *State*, 679 So. 2d 1299, 1299 (Fla. App. 1996) (stating in dicta that defendant in possession of baggie containing cocaine can be convicted of both possession of narcotic and possession of drug paraphernalia); *State* v. *Purves*, Docket No. 56600-1-II, 2023 WL 2263293, \*6 (Wn. App. February 28, 2023) ("both the baggy and the substance [inside it] are evidence that [the defendant] violated the drug paraphernalia statute"), review denied, 1 Wn. 3d 1021, 532 P.3d 149 (2023).

Likewise, in the present case, under the plain language of § 21a-240 (20) (A), the glassine bags containing narcotics that were found in the defendant's possession constitute drug paraphernalia. We recognize that prosecutions under the drug paraphernalia statute typically involve other tools or items connected with the use, packaging and sale of narcotics; however, the plain language of § 21a-240 (20) (A) does not exempt from its coverage individual bags used to contain the very narcotics a defendant is found to have possessed.

We conclude, therefore, that there was sufficient evidence from which the jury reasonably could have found beyond a reasonable doubt that the defendant was in possession of drug paraphernalia. Accordingly, the defendant's sufficiency of the evidence claim fails with respect to his conviction of possession of drug paraphernalia with intent to use.[15]

---

[15] Having determined that the evidence was sufficient for the jury to find the defendant guilty of possession of drug paraphernalia with intent to use on the basis of the defendant's possession of the small bags of crack cocaine that he dropped in the kitchen/hallway area and in the bathroom, as well as the two glassine bags containing narcotics, we need not decide whether the evidence was sufficient to support a finding that the defendant constructively possessed the empty plastic bags found in the bedroom of the premises.

## II

We next address the defendant's claim that his conviction of both possession of a controlled substance with intent to sell, as alleged in count one of the amended long form information, and possession of a controlled substance, as alleged in count two, violates the constitutional protection against double jeopardy. He asserts that, under *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), his conviction of possession of a controlled substance in violation of § 21a-279 (a) (1) must be vacated. Specifically, the defendant claims that because possession of a controlled substance is a lesser included offense of the crime of possession of a controlled substance with intent to sell, and because the conduct charged in counts one and two arose out of the same act or transaction, his right to be free from double jeopardy was violated when he was convicted and sentenced separately on both counts. We agree.

The defendant acknowledges that he did not preserve this claim before the court and accordingly requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). "Under *Golding* . . . a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [*Golding*] requirements involve a determination of whether the claim is reviewable; the second two requirements

involve a determination of whether the defendant may prevail." (Citation omitted; internal quotation marks omitted.) *State* v. *Mallozzi*, 225 Conn. App. 787, 814, 317 A.3d 131 (2024).

In the present case, we conclude that the defendant's claim is reviewable under the first two prongs of *Golding* because the record is adequate for review "and the defendant's claim that his conviction violated his right against being placed in double jeopardy is of constitutional magnitude . . . ." *State* v. *Bumgarner-Ramos*, 187 Conn. App. 725, 744, 203 A.3d 619, cert. denied, 331 Conn. 910, 203 A.3d 570 (2019); see also *State* v. *Schovanec*, 326 Conn. 310, 325, 163 A.3d 581 (2017) (reviewing unpreserved double jeopardy claim under *Golding*). We, therefore, initially focus our inquiry on the question of whether the alleged constitutional violation exists and deprived him of a fair trial. See *State* v. *Bumgarner-Ramos*, supra, 744.

The following additional facts and procedural history are relevant to our analysis of this issue. The amended long form information charged the defendant with, inter alia, possession of a controlled substance with intent to sell and possession of a controlled substance. With respect to the possession with intent to sell charge, the state alleged the following: "[I]n the city of Danbury, in the area of #12 Bank Street, on or about October 11, 2018, at approximately 6:50 p.m., [the defendant] possessed with the intent to sell and dispense, offer and give to another person a narcotic substance, to wit: heroin, fentanyl and cocaine . . . ." As to the charge of possession of a controlled substance, the state alleged: "[I]n the city of Danbury, in the area of #12 Bank Street, on or about October 11, 2018, at approximately 6:50 p.m., [the defendant] did possess and have under his control a controlled substance, to wit: heroin, fentanyl and cocaine . . . ." During closing arguments, the

prosecutor told the jury that the inquiry on the possession of narcotics with intent to sell charge is whether "[the defendant] possessed [the narcotics] . . . constructively by having control and knowing where they are or directly on his person." In explaining the possession of narcotics charge as alleged in count two during closing argument, the prosecutor told jurors: "I've described what it means to possess something and what direct control versus circumstantial evidence is, and I don't want to belabor the point, but again in this case, we have the officers' testimony, which the evidence shows the defendant possessed them. It doesn't really get much more direct possession than having something in [one's] mouth . . . ."

We begin by setting forth the appropriate standard of review and the principles of law that guide our analysis of the defendant's claim. "[O]ur standard of review for analyzing constitutional claims such as double jeopardy violations prohibited by the fifth amendment to the United States constitution presents an issue of constitutional and statutory interpretation over which our review is plenary." (Internal quotation marks omitted.) *State* v. *Bumgarner-Ramos*, supra, 187 Conn. App. 747. "The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. . . . Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution] include protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Underwood*, 142 Conn. App. 666, 681, 64 A.3d 1274, cert. denied, 310 Conn. 927, 78 A.3d 146 (2013).

"It is well established that [d]ouble jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. . . . Double jeopardy analysis in the context of a single trial is a [two step] process, and, to succeed, the defendant must satisfy both steps. . . . First, the charges must arise out of the same act or transaction [step one]. Second, it must be determined whether the charged crimes are the same offense [step two]. Multiple punishments are forbidden only if both conditions are met. . . . At step two, we [t]raditionally . . . have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [When] the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact [that] the other does not." (Citation omitted; internal quotation marks omitted.) *State* v. *Abraham*, 343 Conn. 470, 488, 274 A.3d 849 (2022).

The state concedes, and we agree, that because possession of a controlled substance is a lesser included offense of the crime of possession of a controlled substance with intent to sell, the charged crimes are the same offense for double jeopardy purposes. See, e.g., *State* v. *Arokium*, 143 Conn. App. 419, 435, 71 A.3d 569 ("[b]ecause one cannot commit the greater offense of possession of narcotics with intent to sell without first committing the lesser offense of possession of narcotics, the defendant's conviction of this latter offense is violative of double jeopardy principles"), cert. denied, 310 Conn. 904, 75 A.3d 31 (2013). We need only determine, therefore, whether the charges arose out of the same act or transaction.

In determining whether the charges arise out of the same act or transaction, "it is not uncommon that we

look to the evidence at trial and to the state's theory of the case . . . in addition to the information against the defendant, as amplified by the bill of particulars."[16] (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, 328 Conn. 648, 662, 182 A.3d 625 (2018). "When determining whether two charges arose from the same act or transaction, our Supreme Court has asked whether a jury reasonably could have found a separate factual basis for each offense charged." (Internal quotation marks omitted.) *State* v. *Jarmon*, 195 Conn. App. 262, 284, 224 A.3d 163, cert. denied, 334 Conn. 925, 223 A.3d 379 (2020); see also *State* v. *Crawley*, 93 Conn. App. 548, 557, 889 A.2d 930 ("separate convictions for possession of the same controlled substance . . . will not violate the [d]ouble [j]eopardy [c]lause if the possessions are sufficiently differentiated by time, location, or intended purpose" (internal quotation marks omitted)), cert. denied, 277 Conn. 925, 895 A.2d 799 (2006).

The state claims that the two charges stemmed from different acts. Specifically, the state argues that the charge in count one, possession of a controlled substance with intent to sell in violation of § 21a-278 (b) (1) (A), pertains to the narcotics that the defendant possessed when he was standing in the kitchen/hallway area at the time that the officers first entered the premises, which consisted of two glassine bags that each contained a mixture of heroin and fentanyl, as well as six "small, white rock-like substances" of cocaine and six "small bags of crack cocaine," whereas the charge in count two, possession of a controlled substance in violation of § 21a-279 (a) (1), pertains to the narcotics that the defendant subsequently attempted to swallow

---

[16] In the present case, the defendant filed a motion for a bill of particulars on February 10, 2020. The court, however, was not requested to issue a ruling, and therefore, there was no bill of particulars to amplify the information.

in the bathroom, which consisted of the same two glass-ine bags that contained a mixture of heroin and fentanyl and the same six "small, white rock-like substances" of cocaine that he had had in his possession in the kitchen/hallway area.[17] According to the state, "it was reasonable for the jury to infer that, after attempting to ingest [the] narcotics [in the bathroom], [the defendant] no longer possessed an intent to sell" but, rather, "at that point his intent was simply to consume his narcotics, albeit to avoid detection." We are not persuaded.

Because the amended long form information does not resolve the question as to whether the charges arise out of the same act or transaction in the present case, and there was no bill of particulars to amplify the information, we look to the evidence presented at trial and to the state's theory of the case. On the basis of our review of the evidence presented at trial, we conclude that both offenses arose from a single act of possession of narcotics. The narcotics that were in the defendant's possession when he was in the bathroom were also in his possession when the police first entered the premises and the defendant was standing in the kitchen/hallway area. The state suggests that, after the defendant attempted to ingest the narcotics, his intent had changed from an intent to sell to an intent merely to possess. This contention, however, lacks merit because the proper inquiry is "whether *separate* [*criminal*] *acts* have been committed with the requisite criminal intent." (Emphasis in original.) *State* v. *Sullivan*, 220 Conn. App. 403, 429, 298 A.3d 1238, cert. granted, 348 Conn. 927, 305 A.3d 631 (2023). The defendant, while dropping some of the narcotics in the hallway, continuously possessed the remaining narcotics in a single

---

[17] As stated previously in this opinion, the defendant dropped six "small bags of crack cocaine" onto the floor as he ran down the hallway away from the officers.

course of conduct and, therefore, the jury could not reasonably have found that the defendant committed a *separate act* of possession of controlled substances when he ran into the bathroom carrying some of the same narcotics that he had possessed in the kitchen/hallway area. See, e.g., *State* v. *Crawley*, supra, 93 Conn. App. 556–57 ("possession, in itself, might more accurately be viewed as a course of conduct, rather than as an act"). Accordingly, we conclude that the offenses in question—possession of controlled substances with intent to sell and possession of controlled substances—arose out of the same act. Therefore, the defendant has established a constitutional violation that deprived him of a fair trial because his conviction and separate punishments violated the prohibition against double jeopardy.

The state also contends that the defendant possessed "separate stashes" of narcotics for each respective count in support of its claim that the charges arise from different acts. The considerations raised in *State* v. *Crawley*, supra, 93 Conn. App. 557, however, persuade us that the state's claim that counts one and two pertained to different stashes of narcotics is flawed because nothing in the state's case established that the defendant possessed separate stashes that were "sufficiently differentiated by time, location, or intended purpose." (Internal quotation marks omitted.) Id. In *Crawley*, "[t]he state charged the defendant with possessing two separate quantities of cocaine powder, in two separate locations, on the same day." Id., 555. The state presented evidence that when the police stopped the defendant's vehicle, the defendant possessed cocaine powder located in the front pocket of his pants. Id. The state also presented evidence that when different law enforcement officers searched the defendant's room at another location, the defendant possessed additional cocaine powder that was located in a closet. Id., 556.

On appeal, the defendant claimed that his convictions under both counts violated the prohibition against double jeopardy because " '[t]he evidence presented [did] not comprise two separate acts of possession' " but, rather, " 'the defendant possessed both stashes [of cocaine] concurrently, one constructively and one actually on his person.' " Id., 552.

In *Crawley*, in determining "whether the defendant's conduct with regard to the two stashes of cocaine reflected a single course of conduct or whether his conduct reflected distinct acts"; id., 556; this court stated: "Generally, courts which have considered the issue [of multiple prosecutions under controlled substance statutes] have determined that separate convictions for possession of the same controlled substance . . . will not violate the [d]ouble [j]eopardy [c]lause if the possessions are sufficiently differentiated by time, location, or intended purpose." (Internal quotation marks omitted.) Id., 557. The court in *Crawley* determined that "there was no evidence suggesting that both stashes of cocaine were in any way related to a single drug transaction" and that "[t]he police did not discover the cocaine during one encounter with the defendant." Id. Rather, the evidence reflected that "one stash was discovered during a search incident to an arrest" at one location, "and the other was discovered [later in the day] during a search of the defendant's residence." Id. As a result, this court concluded that the defendant failed to demonstrate on appeal "that his possession of the two stashes of cocaine on [the same date at different locations] was linked to a single course of conduct." Id., 558. This court also noted that "[e]ach of the charges required distinct legal instructions by the court and factual findings by the jury." Id. This court concluded that because the two charges did not arise from the same act or transaction, the defendant's two criminal acts of possession were separately punishable and "did

not put him in jeopardy twice for a single criminal act." Id.

In the present case, by contrast, the state's claim that counts one and two relate to two different "stashes" of narcotics is unpersuasive because the evidence presented showed that the narcotics that the defendant possessed in the bathroom were among the *same* narcotics that he possessed just moments earlier when he was standing in the kitchen/hallway area. The narcotics in the present case were "linked to a single course of conduct" and were discovered by the police during a single encounter with the defendant. Additionally, the court did not provide the jury with distinct instructions as to two separate stashes of narcotics. See, e.g., *Williams* v. *State*, 104 So. 3d 254, 262 (Ala. App. 2012) (acts of possession were not separate where "[b]oth stashes were found at essentially the same location" and "at the same time" and were "the same controlled substance" (internal quotation marks omitted)); see also *Commonwealth* v. *Harris*, Docket No. 15-P-1569, 2017 WL 715128, *2–3 (Mass. App. February 23, 2017) (unpublished opinion) (no duplicative punishment where charges were based on different quantities of cocaine found in different areas of defendant's vehicle and judge differentiated between two quantities of narcotics at issue during final instructions to jury), review denied, 476 Mass. 1114, 80 N.E.3d 980 (2017).

The state also relies on language from its closing argument regarding the defendant's attempt to consume certain narcotics in the bathroom to support its claim that counts one and two were based on different acts. That language, however, did not distinguish between the conduct charged in the two counts in any meaningful way because it did not clearly articulate a theory that the two charges were each based on separate stashes of narcotics, which the state now claims on appeal. To be sure, the statement made by the prosecutor during

closing argument regarding count one—that the charge is proven if "[the defendant] possessed [the narcotics] whether constructively by having control and knowing where they are or directly on his person"—indicates that the possession with intent to sell charge was being prosecuted on the theory that both the narcotics the defendant dropped and the narcotics that he attempted to ingest constituted the narcotics that he intended to sell. Although the state's later discussion of the possession charge at closing argument referenced the defendant's attempted ingestion of narcotics, that single reference is not enough to support the state's claim that it clearly distinguished between the conduct that gave rise to counts one and two during closing argument.

Moreover, a review of the record reveals that, in its theory of the case, the state did not draw a distinction between the defendant's conduct inside and outside of the bathroom with respect to his possession of narcotics. For instance, the amended long form information does not draw a distinction between the conduct, or the particular narcotics, that counts one and two are based on, and according to it, both offenses arose out of the same transaction—the defendant's possession of heroin, fentanyl and cocaine at the premises on October 11, 2018. Indeed, none of the evidence presented at trial indicated that counts one and two pertained to different stashes of narcotics possessed by the defendant, and the trial court's jury instructions on counts one and two did not draw any distinction between the particular narcotics that the defendant dropped outside of the bathroom and those that the defendant attempted to ingest inside the bathroom.

Given the lack of support for the state's argument in the charging documents, the evidence adduced at trial and the state's overall presentation of its case, the jury could not reasonably have found a separate factual basis for counts one and two. Therefore, we conclude

that a constitutional violation exists that deprived the defendant of a fair trial.[18]

With respect to *Golding*'s fourth prong, we further conclude, and the state does not argue to the contrary, that the error is not harmless. "Although we acknowledge that the court sentenced the defendant to serve a concurrent sentence for the lesser and greater offenses, we recognize that the conviction of both of the separate offenses, in their own right, impermissibly harms the defendant." *State* v. *Bumgarner-Ramos*, supra, 187 Conn. App. 751. Consequently, pursuant to *State* v. *Polanco*, supra, 308 Conn. 260,[19] we remand the case to the trial court with direction to vacate the defendant's conviction of the lesser included offense of possession of a controlled substance. In vacating the defendant's conviction of possession of a controlled substance, we note that the sentence imposed for his conviction of that offense was to run concurrently with the sentences imposed for the other offenses of which the defendant was convicted. Accordingly, it is unnecessary to remand this case to the trial court for resentencing. See *State* v. *Graham S.*, 149 Conn. App. 334, 346, 87 A.3d 1182 ("[w]e have held that when some of a defendant's convictions are reversed, and the trial court

[18] We note that, if the "legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial"; (internal quotation marks omitted) *State* v. *Burgos*, 170 Conn. App. 501, 551, 155 A.3d 246, cert. denied, 325 Conn. 907, 156 A.3d 538 (2017); however, "the burden is on the state to present evidence of clear legislative intent to specifically authorize cumulative punishments," and the state has made no such argument in the present case. Id., 552.

[19] In *State* v. *Polanco*, supra, 308 Conn. 260, our Supreme Court exercised its supervisory authority and adopted a rule "that when a defendant is convicted of greater and lesser included offenses, the trial court shall vacate the conviction for the lesser offense rather than merging it with the conviction for the greater offense."

clearly intended that a nonreversed conviction control its sentencing scheme, remand for resentencing is not necessary where reversing the improper convictions and vacating the accompanying sentences will not frustrate the trial court's intent" (internal quotation marks omitted)), cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

The judgment is reversed only as to the conviction of possession of a controlled substance and the case is remanded with direction to render judgment vacating the defendant's conviction of that offense; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.